USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JAN 1 1 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
In re MF Global Holdings LTD.

                Debtor,

                                  12 Civ. 4139 (AJN)

**Jill Zunshine,**

                Appellant,                ORDER AND OPINION

    -v-

**James W. Giddens,** *Trustee for the SIPA Liquidation of MF Global Inc.,*

                Appellee.

-------------------------------------------------------------- X

ALISON J. NATHAN, District Judge:

      Appellant Jill Zunshine, proceeding *pro se*, appeals from two orders issued by the United States Bankruptcy Court for the Southern District of New York (the "Orders").[1] Ms. Zunshine seeks review of the Bankruptcy Court's approval, through the Orders, of a Declaration and Release that former MF Global Inc. commodity customers are required to sign before they can receive a distribution from MF Global's SIPA trustee. For the reasons that follow, the Bankruptcy Court's approval of the Declaration and Release is AFFRIMED.

## I. BACKGROUND

      MF Global was a joint broker-dealer (dealing in both securities and commodities) and a registered commodities futures commission merchant. *In re MF Global Inc.*, 467 B.R. 726, 731 (Bkrtcy. S.D.N.Y. 2012). Ms. Zunshine is a former MF Global futures customer. (Zunshine Br. 1)

---

[1] Specifically, the April 26, 2012 Order in Furtherance of Claim Processing Order and Resolving Objections Related to Release of Claims from Futures Customers, (11-02790 Dkt. # 1449), and the April 26, 2012 Order Approving Trustee's Motion for First Interim Distribution for Allowed Commodity Futures Claims, (11-02790 Dkt. # 1450).

On October 31, 2011, the Securities Investor Protection Corporation ("SIPC") filed an application in the United States District Court for the Southern District of New York seeking a decree initiating liquidation proceedings for MF Global. *Sec. Investor Protection Corp. v. MF Global Inc.*, No. 11-cv-7750, Dkt. # 1. The SIPC, created by the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78aaa *et seq.*, "is a nonprofit corporation designed to provide financial protection to the customers of member broker-dealers in the event that such a broker-dealer fail[s]." *Peskin v. Picard*, 440 B.R. 579, 582 (S.D.N.Y. 2010). As it did in this case, the SIPC is empowered to file an application with a United States District Court seeking a decree initiating liquidation proceedings if it determines that a member has failed or is in danger of failing to meet its obligations to customers. *Sec. Investor Protection Corp. v. Barbour*, 421 U.S. 412, 416 (1975). If the court grants the application, it must appoint the SIPC's designee as trustee to liquidate the business. *Id.* at 416-17.

In this case, the Honorable Paul A. Engelmayer granted the SIPC's application and entered an Order Commencing Liquidation of MF Global Inc., which (i) appointed James W. Giddens as Trustee for the liquidation of MF Global pursuant to § 78eee(b)(3) of SIPA, (ii) appointed the law firm of Hughes Hubbard & Reed LLP as counsel to the Trustee pursuant to § 78eee(b)(3) of SIPA, and (iii) removed the case to the United States Bankruptcy Court for the Southern District of New York, as required by § 78eee(b)(4) of SIPA. *Sec. Investor Protection Corp. v. MF Global Inc.*, No. 11-cv-7750, Dkt. # 3.

Liquidation of a joint broker-dealer like MF Global is subject to two separate regulatory regimes: SIPA and the Commodities Exchange Act (the "CEA"). *In re MF Global Inc.*, 467 B.R. at 732. "In essence, SIPA authorizes a trustee to create and fund a pool of assets within the failed broker's bankruptcy estate that is intended solely to compensate the customers for their

'net equity' held by the broker. The funds collected by the trustee are then paid ratably (or, where possible, in full) to the customers before any distribution is made to other creditors. The effect is to prioritize those customers and to provide them a speedier alternative to a traditional bankruptcy claim." *Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 88 (S.D.N.Y. 2011) (citing 15 U.S.C. §§ 78fff, 78fff–1 and 78fff–2). *Accord Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 11 MC 285, 2011 WL 6057927, at *2 (S.D.N.Y. Dec. 6, 2011). If customer property is insufficient to satisfy the claims of securities customers, SIPA also permits the SIPC to make advances to the trustee for securities customers with a valid net equity claim, up to the statutory limits of protection. *Peskin*, 440 B.R. at 582; *Sec. Investor Protection Corp. v. Jacqueline Green Rollover Acct.*, No. 12-cv-1039, 2012 WL 3042986, at *1 (S.D.N.Y. July 25, 2012). However, the protections afforded under SIPA apply only to securities customers – commodity customers like Ms. Zunshine generally do not fall under its umbrella.[2] *See* Harold S. Bloomenthal and Samuel Wolff, 3D Sec. & Fed. Corp. Law § 23:105 (2d ed. 2012).

However, in the context of a SIPA liquidation, the CEA, in conjunction with the Bankruptcy Code and the Commodities Futures Trading Commission's Part 190 Regulations, provides for a comparable distribution procedure. *In re MF Global Inc.*, 467 B.R. at 732. Under this regime, like under SIPA, "customers are entitled to a pro rata share of the applicable pools of customer property from separate customer account classes." *Id.*

In this case, the Bankruptcy Court approved procedures for former MF Global commodities customers like Ms. Zunshine to file claims with the Trustee for their pro rata share of applicable customer property. According to the Trustee, "[o]nce a claim is determined, the Trustee mails a Letter of Determination, advising the claimant of the substance and reasons for the determination, as well as the claimant's right to object to the determination in Bankruptcy

---

[2] Both Ms. Zunshine and the Trustee acknowledge this. (Zunshine Br. 1; Trustee Br. 9)

3

Court. . . . Accompanying each Letter of Determination is a Declaration and Release, which claimants are required to sign in order to receive their allowed distributions." (Trustee Br. 5)

However, certain commodities customers, including Ms. Zunshine, filed objections to the Declaration and Release. These objections were taken up by the Bankruptcy Court at a hearing on April 12, 2012. Following the April 12th hearing, the Trustee modified the Release, and on April 24, 2012, the Bankruptcy Court issued a Memorandum Opinion resolving objections raised at the April 12th hearing. (11-02790 Dkt. # 1421) On April 26, 2012, the Bankruptcy Court issued two orders. The first order approved the Declaration and Release form to which Ms. Zunshine now objects. (11-02790 Dkt. # 1449) The second order approved the First Interim Claims Distribution to commodities customer claimants who had received and agreed to the final determination of their claim. (11-02790 Dkt. # 1450)

On appeal, Ms. Zunshine does not challenge the Trustee's determination of her claim. (Zunshine Br. 2) Rather, she objects to two provisions contained in the Declaration and Release, and therefore appeals from both of the Orders to the extent that they approve the Declaration and Release. (Zunshine Br. 2)

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(1), district courts are vested with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. "The legal conclusions of the bankruptcy court are reviewed *de novo*, but the findings of fact are reversed only when they are 'clearly erroneous.'" *In re Saint Vincents Catholic Medical Centers of New York*, 449 B.R. 209, 213 (S.D.N.Y. 2011). Because this appeal presents only questions of law, the Court's review is *de novo*.

## III. DISCUSSION

On appeal, Ms. Zunshine challenges two provisions contained in the Declaration and Release approved by the Bankruptcy Court. To be clear, Ms. Zunshine does not object to the Trustee requiring a release; rather, she objects to the two particular provisions of the Declaration and Release discussed herein. (Zunshine Br. 4) The Court addresses each of these provisions, and Ms. Zunshine's objections thereto, in turn.

### A. The Release Provision

Ms. Zunshine objects to the second paragraph of the Declaration and Release, which provides:

> Claimant, on behalf of Claimant and Claimant's heirs, successors and assigns, and contingent only upon receipt of a pro rata share of the Allowed Amount as described in and pursuant to the terms of the Notice (the "Consideration") from the Trustee after receipt by the Trustee of this signed Declaration and Release, hereby remises, releases, and forever discharges the Trustee and his agents, employees, professionals, successors and assigns, the Securities Investor Protection Corporation ("SIPC") and its agents, employees, officers, directors, professionals, successors and assigns, and the MFGI estate (all of the foregoing, collectively, the "Released Persons") of and from any and all net equity claims, but only to the extent of the Consideration actually received by Claimant, arising out of or relating to the Claim, the circumstances that gave rise to the Claim, the account referenced above and all related sub-accounts (collectively, the "Account"), and any other transactions or dealings with MFGI or any entity or other person affiliated with MFGI relating to the net equity Claim, which the Claimant now has, or hereafter can, shall, or may have, for or by any reason of any cause, matter, or thing whatsoever, prior to and including the date of execution hereof. Claimant represents and warrants that it is aware of no liens or claims against the Account or its contents, and acknowledges and agrees that, to the extent the Account or property contained therein may be subject to any liens or claim, delivery of the Consideration will be subject to any such liens or claims.

(11-02790 Dkt. # 1449, Ex. A) This provision is referred to herein as the "Release Provision."

Ms. Zunshine contends that the Bankruptcy Court should not have approved the Release Provision because (i) it is unnecessary; (ii) it releases claims beyond paid portions of her net equity claim; and (iii) it improperly creates a right of set-off in favor of the SIPC. (Zunshine Br. 8-10) None of these arguments is availing.

5

Ms. Zunshine first contends that that the Bankruptcy Court should not have approved the Release Provision because is unnecessary. Essentially, she argues that the provision does no work because, whether or not it is included in the Declaration and Release, the Trustee will have to defend any suit by a claimant for the paid portion of his or her net equity claim by showing that the claimant has already recovered those funds. (Zunshine Br. 8) However, Ms. Zunshine fails to explain why the fact that the Release Provision conforms to the longstanding rule that a party may not recover twice for the same injury is a reason for the provision to be stricken.

Ms. Zunshine next argues that the Release Provision should not have been approved because it improperly extends to claims beyond the paid portion of her net equity claim. (Zunshine Br. 9) However, in approving the Release Provision, the Bankruptcy Court confirmed that it applied only to "claims for actual payments or distributions to a commodities claimants [*sic*]" and held that such claims were released "only to the extent of funds such commodities claimant actually receives on account of the claimant's allowed commodities net equity claim from the Trustee in connection with this proceeding." (11-02790 Dkt. # 1449 at p. 2)

Finally, Ms. Zunshine asserts that the Release Provision improperly creates a right of set-off in favor of the SIPC. (Zunshine Br. 9) More specifically, she contends that it improperly limits her ability to recover on any non-net equity claims that she might have against the SIPC. (Zunshine Br. 9) However, by its express terms, the Release Provision applies only to net equity claims: "Claimant . . . hereby remises, releases, and forever discharges [the Trustee, SIPC, and the MF Global Estate] of and from any and all net equity claims . . . ." Indeed, the Bankruptcy Court confirmed as much in its order approving the Declaration and Release. (11-02790 Dkt. # 1449 at p. 2) Thus, it is difficult to see how the Release Provision would include, for example,

6

Ms. Zunshine's contemplated claim against the SIPC for providing "false and misleading information in its web site." (Zunshine Br. 9, n. 5).

Furthermore, even if the Release Provision did reach beyond net equity claims, it simply articulates the longstanding rule that a plaintiff is not entitled to recover more than once for the same injury. If Ms. Zunshine were to bring suit against the SIPC for losses that she had already recovered through the net equity distribution, the law would foreclose such recovery. *See Sparaco v. Lawler, Matusky, Skelly Engineers LLP*, 313 F. Supp. 2d 247, 250 (S.D.N.Y. 2004) ("A plaintiff is not entitled to recover twice for the same injury.") (citing *Computer Assoc. Int'l v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992)). Indeed, Ms. Zunshine appears to recognize this when she argues that this legal principal renders the Release Provision unnecessary. As the Court has already stated, the fact that the Release Provision is consistent with the law is not a reason to strike it.

In sum, the Court finds Ms. Zunshine's objections to the Release Provision unavailing.

### B. The Indemnification Provision

Ms. Zunshine also objects to the third paragraph of the Declaration and Release, which provides:

> Notwithstanding any rights or remedies available to Claimant under applicable law, Claimant acknowledges and agrees to return immediately any property to the MFGI estate that is later found by the Trustee or determined by a court (1) to have been distributed in error, (2) to exceed Claimant's pro rata share of customer property distributed by the MFGI estate, or (3) to be subject to liens or claims of the MFGI estate or any other entity or other person and will indemnify and hold harmless the Released Persons from and against any damages, costs or losses that may result from any assertion by any such other entity or other person of any such liens or claims.

(11-02790 Dkt. # 1449, Ex. A) This provision is referred to herein as the "Indemnification Provision."

Ms. Zunshine contends that by making agreement to the Indemnification Provision a prerequisite to receipt of a net equity distribution, the Trustee has breached its fiduciary duty to commodity futures customers like her. (Zunshine Br. 5-7) As an illustration of this point, Ms. Zunshine proffers a scenario in which there is a lien on her MF Global futures account of which she is unaware, the lien holder subsequently notifies the Trustee of the lien, which notice the Trustee negligently disregards, and then the lien holder sues the Trustee. (Zunshine Br. 6) Ms. Zunshine argues that, in this scenario, the Indemnification Provision would require her to indemnify the Trustee despite his negligence. (Zunshine Br. 6) She concludes that such far reaching indemnification contravenes the fiduciary duties owed by the Trustee to customers like her. (Zunshine Br. 7)

Ms. Zunshine is correct that the Trustee owes customers like her certain fiduciary duties. A trustee in a liquidation proceeding under SIPA is vested with "the same powers and rights . . . as a trustee in a case under title 11" and is subject to "the same duties as a trustee in a case under chapter 7 of title 11." 15 U.S.C. § 78fff–1(a), (b). Thus, a SIPA trustee "has a duty to treat all creditors fairly and to exercise that measure of care and diligence that an ordinarily prudent person under similar circumstances would exercise." *In re Adler, Coleman Clearing Corp.*, No. 95–08203, 1998 WL 551972, at *17 (Bkrptcy. S.D.N.Y. Aug. 24,1998).

However, the Court is not persuaded that a SIPA trustee breaches a fiduciary duty simply by requiring claimants to indemnify the trustee, the estate, or the SIPC in the event that a lien undisclosed to the trustee at the time of distribution is later discovered. While requiring indemnification in the face of grossly negligent or reckless conduct on the part of the Trustee might well contravene the duty of care that the Trustee owes to customers like Ms. Zunshine, the Court declines to assume that the Indemnification Clause is meant to reach such a situation.

Indeed, in such a circumstance, the Indemnity Provision might well be void *ab initio*. *See, e.g., American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004) (Under New York law, contractual right to indemnity for acts constituting gross negligence or willful misconduct is void as against public policy.).

In sum, the Court is not persuaded by Ms. Zunshine's objections to the Indemnification Provision.

## IV.   CONCLUSION

For the forgoing reasons, the Bankruptcy Court's approval of the Declaration and Release is AFFIRMED. This appeal is DISMISSED, and the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: January \_\_11\_\_, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge